**UNITED STATES BANKRUPTCY COURT FOR**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

IN RE:                                                          Case No.13-13358-REG

**MRM 88 LLC d/b/a Regis Royal Restaurant**

                                    **Debtor,**

IN RE:

**MRM 88 LLC d/b/a Regis Royal Restaurant**

                                    **Plaintiff,**

-AGAINST-

**88 Greenwich Owner, LLC & Thor Equities, LLC,**

                                    **Defendants,**


                                                        **COMPLAINT**

-------------------------------------------------------------------------X

Plaintiff herein by its attorney, Flaum & Associates, P.C., as and for its Complaint against Defendants respectfully states as follows:

**JURISDICTION**

1. The Debtor MRM 88 LLC filed a Petition for relief pursuant to Chapter 11 of the bankruptcy code on the 15th day of October, 2013. This Court has jurisdiction of this Adversary Proceeding pursuant to 28 U.S.C. Section 157 and 1334. Venue is proper in this District pursuant to U.S.C. Section 1409. The statutory predicate for this proceeding is 11 U.S.C. Section 542 of the Bankruptcy Code and Rules 3012, 6009 and 7001 et seq. of the Federal Rules of Bankruptcy Procedure. This action is a core proceeding as defined in 28 U.S.C. Section 157 (b) (2) (A) and (K).

## THE PARTIES

2. The Plaintiff MRM 88 LLC (hereinafter "MRM") is the Debtor herein which is in the business of operating a restaurant at 88 Greenwich Street, New York, New York 10006 (hereinafter "The Premises").

3. Upon information and belief The Defendant 88 Greenwich Owner, LLC is a limited liability company (LLC) formed under the laws of State of Delaware and is authorized to do business in New York. Again, upon information and belief The Defendant 88 Greenwich Owner, LLC (hereinafter "88") maintains its offices and principal place of business at the same address as that of The Debtor, namely 82-88 Greenwich Street. Upon information and belief 88 is the owner and landlord of the premises.

4. Upon information and belief the Defendant Thor Equities LLC (hereinafter "Thor") is a New York limited liability company with its offices and principal place of business at 25 West 39th Street, New York, New York and is the parent company of The Defendant 88.

## BACKGROUND AND FACTS COMMON TO ALL CAUSES OF ACTION

5. On or about the end of 2008, MRM, a newly formed Restaurant began negotiating with The Defendants to lease vacant space in their building with an address of 82-88 Greenwich Street a/k/a 97 Washington Street New York, New York 10006 a/k/a 21 Rector Street New York, New York 10006 (The Premises). The purpose was for MRM to open a restaurant at this location.

6. On or about January 30th, 2009 MRM signed a lease ("The Original Lease") for the ground floor space and mezzanine level for the restaurant's operations ("The

Restaurant") see Exhibit A annexed hereto.

7.  The Defendants granted to MRM $110,000 in tenant improvements/construction allowances. MRM gave The Defendants a $75,000 security deposit. (See Exhibit A Section 1.3(C) (1)).

8.  MRM then began construction of the premises to prepare to open as a restaurant and for MRM's specific needs.

9.  In or around November 2011 MRM leased additional space in the mezzanine section of the Restaurant. (See Exhibit B annexed hereto) This space was divided into two portions. One side served as additional seating space for more formal dining and the other side served as a space for parties ("Party Room").

10. Due to Defendants various obstructions, delays, and obfuscations, as detailed below, MRM's construction work took more than 2 years to complete. MRM was only able to first open the restaurant on or about May 21st, 2011, 2 years after signing the Original Lease.

11. Through and including the date hereof MRM has been unable to open the Party Room. As detailed below Defendants' various obstructions are even now keeping MRM from operating its restaurant.

12. Furthermore, and as hereinbelow detailed MRM was without the bare necessities after the striking of "Super Storm Sandy". To wit MRM was without the following: water, gas, electricity, telephone service, and internet service period. It is not possible to operate a restaurant without all of these necessities. MRM was completely unable to access the premises, as it needed to during the time of Sandy and its aftermath.

## DEFENDANTS OBSTRUCTIONS, DELAYS, AND OBFUSCATIONS

13. Shortly after signing the Original Lease MRM sent defendants plans for a proposed build out of the premises. Here too the Defendants obfuscated and delayed granting their approval. After a few months Defendants eventually granted their approval. On or about June 6, 2009 MRM received approval from the NYC Department of Buildings for the construction plans (See Exhibit C annexed hereto)

14. Even after finally after approving the plans Defendants still disapproved various components thereof.

15. At or shortly after the Original Lease execution Defendants told MRM that the existing exhaust hood in the kitchen is "perfect" and MRM need not replace it with new exhaust. MRM then proceeded to construct the Restaurant's kitchen to its specific needs.

16. Only later, in or about the Fall 2010, Defendants specified that MRM must install a new exhaust system. This caused MRM a delay of more than 8 months because it had already constructed the kitchen with the existing exhaust in place. MRM was forced to destroy the existing exhaust and install a new one. Thereafter even after MRM agreed to install a new exhaust system Defendants delayed and only agreed to the plan after a significant delay.

17. The demolition and new installation involved extra costs. Defendants told MRM they would pay but in fact never did and MRM was forced to pay out of pocket.

18. In late 2010 Defendants represented to MRM that the walls in the mezzanine section were properly installed to pass a fire inspection. Ultimately this proved untrue and the construction failed said inspection. Thereafter MRM incurred additional costs and

time delays to perform the additional construction required.

19.  The NYC Department of Buildings approval expired due solely to the Defendants actions and obstructions to MRM's construction. Thus MRM had to renew and extend the permit several times. (See Exhibit D annexed hereto) Nevertheless Defendants continued to actively pursue the monthly rent.

20. At about this time the parties agreed to the Amended Lease for the Party Room space. The amendment granted MRM time to pay the rent and provided that the Defendants would reimburse MRM $150,000 upon MRM's opening for business. (See Exhibit B annexed) This sum was to reimburse MRM for the cost of the exhaust, mezzanine walls, mechanical work and the restroom on the mezzanine level. MRM also gave Defendants an additional $40,000 as a security deposit thus increasing the moneys on deposit to $115,550. (See Exhibit B Section 9)

21. Defendants delayed the required reimbursement and it was only in 2012 that the debtor was eventually reimbursed $35,000 for the mezzanine wall construction.

22. Defendants have yet to fund the remainder of the requisite reimbursement.

23. Another significant delay involved the sprinkler system. The Original Lease provides that MRM must have an Ansul sprinkler system. MRM fully complied and installed an Ansul system. In or about July 2012 when MRM leased the Party Room and Defendants were required to pay MRM at least some of the moneys owed to it, the Defendants advised MRM that the building's policy required a sprinkler system and that an Ansul sprinkler system is insufficient to meet such requirement. The lease, nevertheless, only mandates MRM to install an Ansul system and states nothing as to the necessity of another sprinkler system. (See Exhibit A Section 5.2 (H)

24. Notwithstanding the foregoing MRM agreed to install an additional sprinkler system and planned on attaching the new system to the existing sprinkler pipe. Defendants however forbade MRM to attach the existing sprinkler system stating that the line is reserved for the lobby sprinklers and the pipe has insufficient capacity for the additional sprinkler system.

25. This required MRM to redraw the sprinkler system from the basement plumbing. The delay added cost to MRM and also delayed MRM's opening of the Party Room because that space was then rendered unusable for at least 90 days.

26. While Defendants refrained from charging MRM rent for 3 months for the Party Room, this delay was for an additional three months for which MRM was required to pay rent.

27. As a result MRM suffered pecuniary damages in the sum of the three months rent paid.

28. The Party Room has a private direct entrance (and exit) located on the Washington Street side of the premises. This entrance is entirely separate from the restaurant's main doors, which are located at 21 Rector Street.

29. From October 29, 2012 when Hurricane Sandy struck until approximately June 2013 the Defendants caused construction to take place immediately outside the Washington Street entrance causing the entrance to be inaccessible and unusable (See Exhibit E annexed hereto).

30. The result was MRM's inability to use the Party Room for this particular period of time. This was because patrons could not access the entrance and also because the Department of Buildings warned that it was a hazard to use the Party Room without

such ingress and egress and such use would be unlawful.

31.  During the period from approximately May 24 2011 to approximately October 28 2012 Defendants erected scaffolding to cover the entire façade of MRM's premises and from thereafter until mid March 2013 the scaffolding continued to cover approximately 50 percent of the façade. This of course, caused additional damage to MRM, which was unable to properly advertise their brand and name, and was rendered either wholly or partially invisible.

32. MRM continuously requested Defendant's permission to place a sign on the exterior of the scaffolding similar to what other tenants were permitted to do at the time. (See Exhibit F hereto)

33. Once again Defendants obstructed, obfuscated, and completely denied MRM's request without giving any reason therefor.

## HURRICANE SANDY

34. On October 29, 2012 Hurricane Sandy struck New York City and the surrounding areas.

35. MRM's restaurant was submerged under at least 3 feet of water, sewage and oil. Everything in the premises was damaged beyond repair. The walls, windows, furniture, refrigerators, boilers, restrooms, kitchen behind the bar area ("pre kitchen") and all the merchandise including but not limited to food and beverages was damaged and ruined (See Exhibit G annexed hereto)

36. In addition the premises were without gas, electric, water, telephone, internet service and usable plumbing.

37. MRM's representatives met with the superintendent of the building, one Tom

Calandro, and together they toured the premises and viewed the total destruction.

38. MRM then contacted one Veronica, Defendant Thor's contact person for this property at Thor's offices and gave her an update on the condition of the premises. MRM requested that defendants repair the premises. Veronica told MRM that the lease does not cover this damage and MRM must continue to pay rent.

39. MRM was able to return to the premises in December 2012. At that time, however, it was without all the basic utilities until approximately January 7, 2013. During December and January the various basic utilities were sporadic and came back to the premises in stages. Water returned in early December 2012, electricity through a generator at approximately at the same time, finally gas on or about January 7, 2013.

40. These are all basic utilities essential for a restaurant to properly function. Without all of these utilities a restaurant simply cannot operate.

41. While MRM physically returned to the rental space in December 2012 the Restaurant was not even close to being operational let alone running at full capacity.

42. It is axiomatic that cooking gas is essential for a restaurant's kitchen to properly function and thus MRM was constructively evicted until at least January 7 2013.

43. As a result of the foregoing MRM was completely unable to access the premises as it needed during the time of Sandy and its aftermath. *See Pacific Coast Silks, LLC v. 247 Realty, LLC, 76 A.D. 3d 167 (N.Y. App. Div. 2010)*. Due to the nature of the restaurant business and to preserve its good will MRM was unable to wait for Defendants to act and was forced to bear all costs of repair of the damage. Thus MRM spent the following:

A)  $35,000 to restore electrical service

B) $12,000 on plumbing

C) $75,000 to replace refrigerators, bar, kitchen repair and boilers

D) $30,000 on general construction such as new sheetrock for new painting and walls

E) $45,000 to replace food which had spoiled

F) $27,000 to replace furniture that was storm damaged or ruined

44. Thus MRM spent at least $224,000.00 just to render the restaurant operational again (See Exhibit H annexed hereto).

45. In addition to the foregoing MRM also suffered inventory and property loss of at least $515,450 (See Exhibit I annexed hereto).

46. In accordance to the Original Lease Defendants are clearly responsible for these repairs and replacements. Article 12 entitled "Casualty" of the Lease provides in pertinent part:

> (a)     Subject to SECTION 12.1(b), if any part of the Premises shall be damaged by fire or other casualty, Tenant shall give prompt notice thereof to Landlord and Landlord shall commercially reasonable efforts to cause the Condominium to repair such damage to any part of the Premises, the repair of which is the Condominium's obligation under the Condominium Documents, in a manner and at times which do not unreasonably interfere with Tenant's use of the Premises, Rent shall not be reduced or abated during the period of such repair, restoration or rebuilding even if the improvements are not tenantable.  Landlord shall not be liable for any inconvenience or annoyance to Tenant or injury to the business of Tenant resulting in any way from the undertaking of such repair.

> (c)     In the event Landlord does not terminate this Lease in accordance with the provisions herein above, Landlord shall use commercially reasonable efforts to cause the Condominium to repair or rebuild the Premises in accordance with Paragraph (a).  The estimates required herein shall be provided by an independent architect, representative and/or contractor selected by the Condominium within sixty (60) days following said damage or casualty.

47. MRM was in complete compliance with Article 12. Indeed MRM promptly notified Defendants of the casualty but Defendants did nothing, let alone make reasonably commercial efforts to repair as required by Paragraph (a) hereinabove quoted.

48. Defendants also failed to provide an independent architect, representative and/or contractor within sixty (60) days of the damage.

49. The foregoing caused MRM to miss the Holiday season of 2012-2013, which, by far, is any restaurant's most profitable time of the year.

50. The foregoing caused MRM an enormous amount of loss of business and a loss in excess of $200,000 in revenues. Annexed hereto as Exhibit J are copies of MRM's receipts from the Holiday season 2011-12 and from the Holiday season 2012-13. As can be seen the profit was greatly reduced.

51. Furthermore until approximately February 2013 the restaurant had to close every Wednesday night by 10pm due to the upkeep of the generator. This caused loss of business to MRM not only due to the early closing but because patrons did not bother coming in at all on Wednesdays knowing they would have leave early.

52. At approximately the end of January 2013 MRM delivered a letter to Defendant Thor, a copy of which is annexed hereto as Exhibit K to Defendants explaining all that transpired and attempted to work out the controversy with Defendants. Unfortunately Defendants never replied.

53. The premises did not have proper heat throughout the entire winter of 2013. After numerous complaints by MRM to the Super and other representatives of the Defendants, MRM's plumber, at MRM's sole expense inspected the heating system and reported that the pump was broken and was never replaced. This left MRM unable to properly entertain its patrons due to the brutally cold weather and lack of heat. Indeed patrons often entered and immediately left due to the cold temperatures in the premises.

54. This pattern has now repeated. The premises have now been without heat from October 15 2013 to date. This once again leaves MRM unable to operate its restaurant and generate any revenues.

55. To add insult to injury the Defendants recently moved the water heater out of the basement and are now unjustly attempting to charge MRM for such move.

56. Finally upon information and belief Defendants in or about May or June 2013 received approximately $3 million in insurance proceeds to compensate for claims filed in connection with the Hurricane Sandy damage to the premises. Not withstanding such receipt Defendants have continued to refuse MRM the amounts claimed and duly owing as per for the foregoing recitation.

## AS AND FOR FIRST CAUSE OF ACTION-BREACH OF CONTRACT

57. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 of this complaint as though more fully herein set forth.

58. Parties hereto agreed to the various lease clauses hereinabove cited.

By failing to reimburse various original construction costs and by failing to repair the damage incurred during Hurricane Sandy, Defendants breached their contract with Plaintiff.

59. Accordingly the Defendants are liable to MRM, and MRM demands damages as herein below set forth.

## AS AND FOR SECOND CAUSE OF ACTION-UNJUST ENRICHMENT

60. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 as though more fully herein set forth.

61. This cause of action is pleaded as an alternative to the cause of action for breach of

contract in the event the Court holds that there is no contract subject to such a claim.

62. Defendants obtained MRM's money held and used it for their own benefit to the detriment of MRM.

63.  Equity requires restitution or the equivalent.

64. By reason of the foregoing Defendants are liable to MRM and MRM respectfully demands damages as hereinbelow set forth.

## AS AND FOR A THIRD CAUSE OF ACTION COMMON LAW FRAUD

65. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 as though more fully herein set forth.

66. This cause of action is pleaded as an alternative to the cause of action for breach of contract in the event that this Court holds that there is no contract subject to such a claim.

67. Defendants' representation were false and the Defendants knew they were false when they made such representations.

68.  Defendants took MRM's money and told MRM that the lease does not cover the loss from Sandy. MRM justifiably relied on Defendant's representations.

69. By reason of the foregoing Defendants are liable to MRM accordingly and MRM demands damages as hereinbelow set forth.

## AS AND FOR A FOURTH CAUSE OF ACTION-CONVERSION

70. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1-56 above as though more fully herein set forth.

71. This cause of action is pleaded as an alternative to the cause of action for breach of contract in the event that this Court determines that there is no contract subject to such a claim.

72. Defendants obtained MRM's money, committed the actions complained of (including statements made) and failed to take the actions they should have taken which are herein complained of, converted the money and proceeds to their own use, and have refused to return either money or the proceeds thereof, although duly demanded.

73. By reason of the foregoing Defendants are liable to MRM accordingly and MRM demands damages as hereinbelow set forth.

### AS AND FOR A FIFTH CAUSE OF ACTION-FRAUD AND FRAUDULENT CONCEALMENT

74. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 as though more fully herein set forth.

75. This cause of action is pleaded as an alternative to the various causes of action for breach of contract in the event that this Court holds there is no contract subject to such a claim.

76. Defendants knew that they obtained MRM's money for their own use, that their statements were misleading statements of material fact under the circumstances, and intended to retain MRM's money to its detriment and to the benefit of Defendants.

77. Defendants also knew or should have known that MRM had no access to the true facts hereof except by access through Defendants.

78. By reason of the foregoing Defendants are liable to MRM accordingly and MRM demands damages as hereinbelow set forth.

## AS AND FOR A SIXTH CAUSE OF ACTION FRAUD IN THE INDUCEMENT

79. Plaintiff repeats and alleges each and every allegation contained in paragraph 1-56 hereof as though more fully herein set forth.

80. The implied and stated representations of Defendants were that once MRM reopened its restaurant for business MRM would be reimbursed.

81. Defendants induced MRM into laying out its own money by telling MRM at their various meetings and conversations that they were going to reimburse MRM, but concealed the fact that MRM would not receive the money owed.

82. MRM relied on the Defendants and had a right to rely on their representations and actions. Defendants knew that MRM was relying on the Defendants and took advantage of such reliance as hereinabove alleged.

83. Defendants had sole access to the facts concealed and regarding a decision to fail to reimburse MRM.

84. Defendants knew that they would obtain MRM's funds and work product for their own use, that their statements were misleading statements of material fact under the circumstances, and intended to obtain MRM's work to its determent and to the benefit of Defendants.

85. Defendants also knew or should have known that MRM had no access to the true facts except through communications with Defendants.

86. By reason of the foregoing Defendants are liable to MRM accordingly and MRM

demands damages as hereinbelow set forth.

## AS AND FOR A SEVENTH CAUSE OF ACTION-BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

87. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 as though more fully herein set forth.

88. The contract entered into between the parties hereto, like all contracts, carried the implied covenant of good faith and fair dealing on the part of all parties including Defendants.

89. By failing to reimburse MRM for its construction work and by failing to adhere to their responsibilities under the lease the Defendants failed to perform the bargained-for terms of the contract and breached their good faith and fair dealing obligations to MRM.

90. By reason of the foregoing Defendants are liable to MRM accordingly and MRM demands damages as hereinbelow requested.

## AS AND FOR AN EIGTH CAUSE OF ACTION-EQUITABLE ESTOPPEL

91. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 as though more fully herein set forth.

92. The contract between MRM and Defendants is subject to the Doctrine of Equitable Estoppele.

93. By leading MRM to believe that its costs would be reimbursed and that MRM was covered under the lease for casualty, Defendants falsely misrepresented material facts. Defendants had actual knowledge of the facts and intended for MRM to act upon the concealment of those true facts. MRM had a right to rely on Defendant's

conduct, and in fact relied on Defendant's conduct, and had no means of discovering the concealed facts.

94. By reason of the foregoing Defendants are liable to MRM accordingly and MRM respectfully demands damages as hereinbelow set forth.

## AS AND FOR A NINTH CAUSE OF ACTION-NEGLIGENCE

95. Plaintiff repeats and re-alleges each and every allegation hereinabove set forth in paragraphs 1-56 as though more fully herein set forth.

96. Defendants had a fiduciary duty to the Plaintiff due to their standing as landlord of the premises.

97. The Defendant's actions and inactions when they had a duty to act were the proximate cause of MRM's losses and MRM has suffered actual damages.

98. Defendants are therefore liable to MRM accordingly and MRM demands damages as hereinbelow set forth.

## AS FOR A TENTH CAUSE OF ACTION-TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

99. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 as though more fully herein set forth.

100. MRM had a legitimate and identifiable prospective business advantage as an operating restaurant. Defendant were aware Of MRM's prospective business advantage and by engaging in the unjustifiable conduct hereinabove described Defendants, intentionally, negligently, and improperly interfered with Plaintiff's prospective economic advantage in the marketplace.

101. As a direct and proximate result of the conduct of the Defendants alleged above, Plaintiff has suffered general and special pecuniary and non-pecuniary damages.

102.   Respondent's actions were taken willfully, wantonly, maliciously, and in reckless disregard for the Plaintiff's rights, and as a direct and proximate result thereof MRM suffered economic damage.

103. The Defendants are liable to MRM accordingly and MRM demands damages as hereinbelow set forth.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION-PRIVATE NUSIANCE

104. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 above as though more fully herein set forth.

105. Defendants scaffolding constituted an interference, substantial in nature and unreasonable in character with Plaintiff's right to use and enjoy its premises.

106. By reason of the foregoing the Defendants are liable to MRM accordingly and MRM demands damages as herein set forth.

### AS AND FOR A TWELFTH CAUSE OF ACTION-CONSTRUCTIVE EVICTION

107. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 above as though more fully herein set forth.

108.   The wrongful acts or inactions by Defendants hereinabove recited substantially and materially impaired and deprived MRM of the beneficial use and benefit of the premises.

109.   MRM was unable to use the premises as it needed to during the time of Hurricane Sandy and its aftermath and has since been materially deprived of its expected and intended use of the premises.

110.   By reason of the foregoing Defendants are liable to MRM accordingly and MRM demands damages as hereinbelow set forth.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION-BREACH OF QUIET ENJOYMENT

111.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 as though more fully herein set forth.

112.   Defendants were responsible for the actions or inactions hereinabove recited and disturbed MRM's covenant of Quiet Enjoyment.

113.   As a result there of MRM was unable to use and enjoy the premises in peace and without interference.

114. By reason of the foregoing Defendants are liable to Plaintiff accordingly and demands damages as hereinbelow set forth.


## AS AND FOR A FOURTEENTH CAUSE OF ACTION-INJUNCTION

115. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-56 hereof as though more fully set forth.

116. By reason of the Defendant's actions and inactions as herein above recited and especially the failure to provide heat, and other essential service which, as aforesaid, goes onto the present time, MRM is unable to operate its restaurant business.

117. At the present time, by reason thereof, MRM is not able to take in revenues and to pay its bills, post petition, as they accrue.

118. It is axiomatic that unless an injunction is issued restraining and enjoining the Defendants from interfering with the Plaintiff's use of the premises and directing the Defendants to provide to the Plaintiff essential services including heat as well as access

to the Party Room entrance the Plaintiff will be irreparably harmed.

119.    Plaintiff has no adequate remedy at law.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this court enter judgment as follows:

1.  Awarding Plaintiff a monetary judgment in such sum or sums as are herein above recited and as may be proven upon the trial of this action.

2.  Awarding the Plaintiff an injunction restraining and enjoining the Defendants from interfering with Plaintiff's use and occupation of the premises, directing the Defendants to provide to the Plaintiff essential services including but not limited to heat and access to the Party Room entrance.

3.  For an award of costs, disbursements, legal fees, reasonable attorney fees and for such other and further relief as this court deems just proper and equitable under the circumstances.

Dated: New York, New York
       November 8, 2013

                              Flaum & Associates, P.C.
                              Attorneys for Plaintiff/Debtor


                         BY:_____
                              Neil R. Flaum (nrf-5028)
                              369 Lexington Avenue, 12th FL
                              New York, New York 10017
                              (212) 509-7400-Telephone
                              (212) 509-740-Fax No.